1  Timothy Barnes
2  590 South Greenwood Rd.
   Independence, Oregon 97351
3  503-585-9517
4  tim@westsidelandscape.com

5  **THE UNITED STATES DISTRICT COURT FOR THE**
6  **DISTRICT OF OREGON**

7

8  Timothy Barnes,                    ) Case No.: *3:15-CV-1001-BR*
9                                     )
                                      )
10             Plaintiff,             ) **FIRST AMENDED VERIFIED**
                                      ) **COMPLAINT FOR MONEY DAMAGES**
11  vs.                               ) **JURY TRIAL DEMAND**
                                      )
12  Routh Crabtree Olsen, PC,         )
    John Thomas, Janaya Carter,       )
13  Shayda Zaepoor Le, Federal        )
14  National Mortgage                 )
    Association, Seterus, Inc.,       )
15  John & Jane Does 1 - 10           )
                                      )
16                                    )
              Defendants              )
17                                    )
   _____  )
18

19              **I. PRELIMINARY STATEMENT AND INTRODUCTION**

20  1.    This first amended petition is an action for

21        statutory and actual relief brought by an individual

22        consumer Timothy Barnes ("Plaintiff") against Routh
23
24        Crabtree Olsen, PC, John Thomas, Janaya Carter, Shayda

25        Zaepoor Le, Federal National Mortgage Association,

26        Seterus, Inc., and John Does 1 - 10 (collectively
27
28        "Defendants") for violations of the Fair Debt

1

Collection Practices Act 15 U.S.C. § 1692 *et seq.* (the
"FDCPA"); to obtain injunctive relief and for
declaratory relief. This petition is also an action
for statutory and actual relief under the Oregon
Unlawful Trade Practice Law ("OUTPL"), Or. Rev. Stat.
§§ 646.605 through 646.656, which are brought under the
Court's pendent and supplemental jurisdiction.
Plaintiff brings this action against the above named
Defendants both jointly and severally based on their
willful violations of said Acts.

2. The FDCPA originally enacted by Congress became
effective on March 20, 1978, and was again amended and
broadened in 1986 and amended again in 1996. In
passing the FDCPA, Congress stated its purpose was "to
eliminate abusive debt collection practices by debt
collectors, to insure that those debt collectors who
refrain from using abusive debt collection practices
are not competitively disadvantaged, and to promote
consistent state action to protect consumers against
debt collection practices." To this end, the FDCPA
expressly prohibits debt collectors from engaging in

2

numerous specific acts or practices and also by mandate, requires debt collectors in attempting to collect consumer debts for others to affirmatively perform specific acts.

3.    The FDCPA defines a "debt collector" to include any person who uses any instrumentality of interstate commerce, the mails in any business, the principle purpose of which business is the collection of any debt, directly or indirectly, owed, due, or asserted to be owed or due to another. The FDCPA also defines a "debt collector" to include any person who regularly collects a debt owed to another.

4.    The FDCPA defines "debt" to mean any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligations have been reduced to judgment. The obligation which Plaintiff is alleged to owe is a "debt" within the meaning of the FDCPA.

3

5.     The FDCPA defines "consumer" as any person obligated
or allegedly obligated to pay any debt.

6.     The obligation to pay the debt does not affect
Defendants liability under the FDCPA.  Whether or not
the Plaintiff owes the debt alleged to be due to any
creditor or alleged creditor is not a factor nor is it
material in this proceeding.  Even if the Plaintiff
does owe an obligation, Defendants must comply in all
respects with the FDCPA.  Therefore, the Plaintiff's
action is not concerned with whether the Plaintiff is
indebted to a creditor or alleged creditor, but whether
Defendants violated the FDCPA, *Baker v. G.C. Services
Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).  "Fair Debt
Collection Practices Act applied to lawyer regularly
engaged in consumer debt-collection litigation on
behalf of creditor client."  Consumer Credit Protection
Act, 803(6), as amended, 15 U.S.C.A. 1692(6), *Heintz v
Jenkins*, 514 U.S. 291, 115 S. Ct. 1489 (1995).

## II.    **JURISDICTION/VENUE**

7.     Jurisdiction of this Court arises under 15 U.S.C. §
1692k(d) and 28 U.S.C. §§ 1331 and 1337(a).

4

Declarative relief is available pursuant to 28 U.S.C. §§ 2201.1 and 2202. The doctrine of pendent and supplemental jurisdiction for state law claims is proper under 28 U.S.C. § 1367.

8. Venue is proper in this district as Defendants transact business here, and the communications as well as the conduct of Defendants upon which this complaint is based occurred here.

## III. **PARTIES**

9. The Plaintiff, Timothy Barnes, is a natural person, and is at all times relevant hereto a resident and citizen of the State of Oregon. The Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and within the scope of the OUTPL.

10. Defendant Routh Crabtree Olsen, PC is a professional corporation duly registered under Oregon Secretary of State engaged as "debt collectors" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a corporation defined within the scope of O.R.S. § 646.639(h), engaged in the business of collecting debts in this State where Defendants regularly collect

or attempt to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone. This Defendant may be served by serving the Officer in Charge at its principal place of business located at Routh Crabtree Olsen, PC, Stephen Routh, 511 SW 10th Avenue, Suite 400, Portland, Oregon 97205 and its statutory agent c/o CT Corporation System, 388 State Street, Suite 420, Salem, Oregon 97301

11.    Defendant John Thomas is a person and a debt collector, employed by Defendant Routh Crabtree Olsen, PC whose principal purpose as a Defendant is the collection of debts using the mails and telephone, and this Defendant regularly attempts to collect debts alleged to be due another.  This Defendant is within the scope of Or. Rev. Stat. § 646.639(h) and may be served with service of process by serving John Thomas, 511 SW 10th Avenue, Suite 400, Portland, Oregon 97205

12.    Defendant Janaya Carter is a person and a debt collector, employed by Defendant Routh Crabtree Olsen, PC whose principal purpose as a Defendant is the

FIRST AMENDED VERIFIED COMPLAINT FOR MONEY DAMAGES, JURY TRIAL DEMAND

collection of debts using the mails and telephone, and this Defendant regularly attempts to collect debts alleged to be due another. This Defendant is within the scope of the Or. Rev. Stat. § 646.639(h) and may be served with service of process by serving Janaya Carter, 511 SW 10th Avenue, Suite 400, Portland, Oregon 97205

13.    Defendant Shayda Zaepoor Le is a person and a debt collector, employed by Defendant Routh Crabtree Olsen, PC whose principal purpose as a Defendant is the collection of debts using the mails and telephone, and this Defendant regularly attempts to collect debts alleged to be due another. This Defendant is within the scope of Or. Rev. Stat. § 646.639(h) and may be served with service of process by serving Shayda Zaepoor Le, 511 SW 10th Avenue, Suite 400, Portland, Oregon 97205

14.    Defendant Federal National Mortgage Association ("FNMA") is engaged as a "debt collector" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as an entity defined within the scope of

7

Or. Rev. Stat. § 646.639(h), engaged in the business of collecting debts in this State where Defendants regularly collect or attempt to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone. FNMA does not have a duly authorized statutory agent in Oregon. This entity may be served with process by serving the Officer in Charge at Federal National Mortgage Association, 3900 Wisconsin Avenue, N.W., Washington, D. C. 20016 and by serving the Oregon Secretary of State, 255 Capital Street NE, Suite 151, Salem, Oregon 97310.

15.    Defendant Seterus, Inc. f/k/a IBM Lender Business Process Services, Inc., ("Seterus" or "IBM" as stated herein), a Delaware Corp., is doing business in Oregon with minimum contacts in this forum. Seterus is an alleged subservicer of FNMA and is engaged as a "debt collector" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a corporation defined within the scope of Or. Rev. Stat. § 646.639(h). Seterus may be served with service of

1 process by serving the Officer in Charge at Seterus,
2 Inc., Jeffrey A. Johnson, President, 3039 Cornwallis
3
4 Rd. Bldg. 203, Suite CC133, Research Triangle Park,
5 North Carolina 27709 and by serving its statutory agent
6 CT Corporation System, 388 State Street, Suite 420,
7
8 Salem, Oregon 97301.

16. Defendants John & Jane Does 1 - 10 are all natural

persons, corporations, parties, or an enterprise

employed by Defendants as debt collectors and are

involved in the instant matter. Said Defendants are

currently unknown to Plaintiff. Said Defendants and

entities will be joined as necessary parties upon

further discovery of their true nature and liability

once these facts are known and supported by competent

evidence.

**IV. CONDITIONS PRECEDENT**

17. Plaintiff avers that all conditions precedent have

been performed or have occurred under Fed. R. Civ.

Proc. 9(c) and FDCPA violations may now be asserted.

# V. **STATEMENT OF FACTS**

18. On the exact date of November 15, 2007, a federally related mortgage transaction was closed naming Chase Bank USA, N.A. as the payee. At the closing, Plaintiff consummated a toxic predatory mortgage loan (the "Transaction") with a principal sum of $378,250.00 secured by a Deed of Trust covering real property described therein, then and now the Plaintiff's *principal dwelling*. Also at the closing, Plaintiff was provided with various disclosure documents relevant to federal law and the subject Transaction. Specifically, the Notices of Right to Cancel provided to the Plaintiff in connection with this Transaction discloses an inaccurate date that rescission rights terminate contrary to Reg. Z § 226.23(b)(1)(v).

19. The Transaction required Plaintiff to pay money arising out of a transaction in which money, property, or goods and services were the subject thereof and the same were primarily for personal, family and household purposes.

20. Accordingly, the *material* disclosure documents

10

provided to the Plaintiff in connection with this Transaction violated the requirements of the Truth in Lending Act, ("TILA"); and Regulation Z in the following respects:

A. By failing to provide accurately the expiration date rescission rights terminate in violation of Reg. Z § 226.23(b)(5).

B. By failing to correctly provide all required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Reg. Z § 226.17(b),

C. By failing to make required rescission disclosures 'clearly and conspicuously' in writing in violation of 15 U.S.C. § 1632(a) and Reg. Z § 226.17(a)(1).

21. On August 4, 2010 and within 3 years under 15 U.S.C. § 1635(f), Plaintiff *exercised* and *achieved* rescission by sending a *valid* written Rescission Notice to all known interested Parties by U.S. Postal Service certified mail, copies attached hereto and incorporated as if fully stated herein by reference as Exhibit 1.

22. According to the unambiguous statutory mandate provided by 15 U.S.C. § 1635(b), Reg. Z § 226.23(d), as long as rescission of the Transaction timely occurred and the notice is *valid*, (and it is), it extinguishes any liability Plaintiff has to any creditor and Defendants for finance or **other charges** arising from the Transaction, "[t]he consumer **shall not be liable for any amount**, including finance charges." Reg. Z § 226.23(d)(1). (emphasis)

23. Upon receipt of a *valid* rescission request, the creditor, or any alleged assignee had twenty-days (20) to refund or credit this account all monies paid and to void the security interest, as required by 15 U.S.C. § 1635(b); Reg. Z § 226.23(d) or seek judicial guidance under Reg. Z § 226.23(d)(4).

24. Thus Plaintiff stopped making payments as of September, 2010 because of the statutory mandate under TILA, Reg. Z, and because if he continued making payments he would by equitably estopped from claiming his rescission was valid resulting in a waiver.

25. Chase Bank USA, N.A. and Chase Home Finance, LLC

flippantly ignored the Plaintiff's *valid* rescission

notice and utterly failed to give effect to TILA

rescission provisions within 20-days receipt, failed to

accept a tender amount, and failed to seek judicial

guidance as required by Reg. Z § 226.23(d)(4).

26.    According to the unambiguous statutory language and

plain meaning of rescission provisions, the performance

of Chase Bank USA, N.A. and Chase Home Finance, LLC is

a condition precedent to Plaintiff's obligation to

tender any further payments until such time as these

parties fully comply with the TILA's statutory mandate.

27.    After Chase Bank USA, N.A. and Chase Home Finance,

LLC received Plaintiff's *valid* Rescission Notice,

Plaintiff received a letter from Chase dated September

13, 2010 describing a Servicer transfer to IBM, copy

attached hereto and incorporated fully herein by

reference as Exhibit 2.

28.    Plaintiff received letters from IBM dated Oct, 11,

2010, Oct. 14, 2010, and Oct. 17, 2010 stating that IBM

has the right to collect payments, the transfer of

servicing and stating the subject Transaction is

currently in default, copy attached hereto and incorporated herein as Exhibit 3.

29.	Since Plaintiff was deemed to be in default, and FNMA did not acquire the alleged debt until after the default, then FNMA is a debt collector within the scope of the FDCPA, an is not exempt under 15 U.S.C. § 1692a(6)(F)

30.	Plaintiff then sent a dispute notice as that term is defined under the FDCPA to IBM dated Oct. 23, 2010 informing IBM that Plaintiff had rescinded, describing the grounds for Plaintiff's rescission, provided IBM with enclosures of the certified mail receipts, and the actual rescission notices sent to Chase Bank USA, N.A. and Chase Home Finance, LLC describing the defective *material* Notices of Right to Cancel, copy attached hereto as Exhibit 4.

31.	Upon information and belief, Chase Bank USA, N.A. allegedly assigns only the Deed of Trust according to a Corporate Assignment on November 16, 2010 to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for FNMA.

14

32.     Subsequent thereto, a letter dated January 21, 2011

        from IBM was received in the mail by Plaintiff stating

        an acknowledgment of Plaintiff's Oct. 23, 2010 dispute

        letter, copy attached hereto as Exhibit 5.  The IBM

        letter, identifies FNMA as the owner of the Transaction

        and states:  "We have been engaged by Fannie Mae to

        collect payments and respond to correspondence about

        its loans." *** "We do not believe that rescission

        would be appropriate for your loan."  Thus, IBM has

        effectively acknowledged that they have some business

        relationship, and authority acting as an agent

        responding for FNMA and the subject Transaction.  Thus,

        upon delivery of Plaintiff's dispute notice with its

        rescission notice enclosure to IBM constituted delivery

        of a rescission notice to FNMA.

33.     On February 4, 2011, Plaintiff filed suit against

        Chase Bank USA, N.A., Chase Home Finance, LLC, IBM, and

        later joined FNMA to enforce his substantive rights

        under TILA, *see Timothy Barnes v. Chase Home Finance,*

        *LLC, et al.*, Case No.:  13-35716.

34.     During the course of that proceeding, FNMA did not

15

have a duly authorized statutory agent in Oregon, and Plaintiff requested various licenses and contracts between FNMA and IBM to substantiate their pleadings. For example, Plaintiff requested documents, copy of Plaintiff's Request for Production attached hereto and incorporated herein as Exhibit 6, as follows:

A. Any and all licenses and/or registrations used by DEFENDANT, as required by Law in order to lawfully conduct its business in Oregon;

B. Any and all agreements and written contracts between DEFENDANT, and FNMA related to this LOAN transaction, regarding or pertaining to the assignment, sale, or transfer of the Balloon Note and Deed of Trust;

C. Please provide a complete audit trail of any document(s), computer(s), or other data held by you which indicate, address or discuss modifying or amending any information regarding Plaintiff reported by you;

D. Please produce all documents which constitute consumer dispute verification (CDV's), Universal Data correction forms, correspondence with any consumer reporting agency, data deletion forms, or other documents which request an alteration and/or deletion of data you reported about Plaintiff;

E. Please produce your documents and/or correspondence in your, or your attorney's, possession[s] that refer to or relate to any fact(s) which you believe may have any bearing upon this lawsuit or any defenses you have raised in this lawsuit, excluding letters between you and your attorney.

16

F. All documents requested in PLAINTIFF'S Rescission Notice; Notice Pursuant to RESPA (QWR); & Request for Accounting.

G. Please produce all documents involving communications between you and any of the following persons, in which the communication in any way referenced Plaintiff and/or any of his personal identifiers and/or any of the LOAN account numbers:

i. Equifax Credit Information Services, Inc.;

ii. Trans Union Corporation;

iii. Experian Information Solutions LLC;

iv. TRW, Inc., or any other entity with a name, legal, trade or assumed, which includes "TRW"

v. Any other consumer reporting agency

35.    None of these documents were ever produced, even after Plaintiff sent the requisite notice that serves as a prerequisite to a meet and confer conference and pursuant to Fed R. Civ. Proc. 37(a)(2)(B), copy attached hereto and incorporated herein as Exhibit 7. The only logical reason for this omission is that the documents do not exist, or the documents contradict FNMA's and IBM's pleadings, and were intentionally withheld from disclosure.

36.    Thus, IBM (or Seterus) and FNMA are not authorized to

maintain private financial records related to Plaintiff and this alleged Transaction, are not owners, or holders of the obligation, and have no licensure to operate a business collecting debts in Oregon. At minimum, this Court may report these entities to the Federal Trade Commission and Oregon Attorney General for operating without proper licensure and registration.

37. The brief discovery phase terminated with a myriad of objections from those parties, and their refusal to produce any documents supporting their defenses and pleadings. However, one document provided to Plaintiff during discovery, the Clay Brangham Declaration, page 6 of 6, disclosed an allonge whereby Chase Bank USA, N.A. is assigning the Balloon Note to Chase Home Finance, LLC.

38. After months of frustrating unresolved and improper litigation and uncooperative discovery disclosure, and communications with Chase Bank USA, N.A., Chase Home Finance, LLC, IBM, and FNMA, Plaintiff filed a Rule 12(c) judgment and disclosed the subject allonge. FNMA

and IBM countered with their own dispositive motions and attached the same Clay Brangham Declaration. However, conspicuously absent from their pleadings and this Clay Brangham Declaration was the allonge. The district court rendered judgment in their favor on July 8, 2013.

39.    Thereafter, Plaintiff timely filed notice of appeal, appealed the judgment, and during the briefing, Plaintiff again disclosed the allonge. However, FNMA, and the Defendants herein this claim, briefed to the Ninth Circuit Court of Appeals that "In fact, Defendant-Appellees reviewed their records and could find no reference to the "allonge" anywhere in any declaration or in any of the documents Defendant-Appellees produced to Barnes." Or to the federal court for that matter.

40.    While Plaintiff's TILA case is still pending on appeal, Plaintiff received multiple letters from a Seterus, Inc., dated February 18, 2014 claiming $514,527.61 is due and delinquent, another dated March 18, 2014 claiming FNMA is the owner, and another by

Lisa Donnelly, dated April 4, 2014, claiming legal authority to foreclose on Plaintiff's property, copies attached hereto and incorporated herein as Exhibit 8.

41. Plaintiff responded with dispute notices applicable to all successors and assigns, dated February 18, 2014, and April 25, 2014 requesting validation, cease and desist, copies attached hereto and incorporated herein as Exhibit 9, informing Seterus that based on previous legal proceedings, and failure to produce contract documents consistent with their pleadings, they did not have authority to send legal notices, or take action to foreclose Plaintiff's property rights.

42. Said communications, Exhibit 8, prove Seterus is conspiring to foreclose Plaintiff's property and accusing FNMA as coconspirator for the common purpose of accruing an unlawful end or economic gain for themselves at the expense and detriment of Plaintiff.

43. Without any Dunning notice under the FDCPA that contains the consumer warning, FNMA, Defendants Routh Crabtree Olsen, PC, and Janaya Carter initiated a Foreclosure complaint, Monetary Award of $375,380.80

Plus Interest, Costs and Fees Pursuant to Or. Rev.
Stat. 21.160(1)(c), copy attached hereto and
incorporated herein as Exhibit 10. Astonishingly, the
allonge that Defendants intentionally omitted in the
federal TILA case when they filed the Clay Brangham
Declaration suddenly appears in the foreclosure case.

44. This FNMA foreclosure complaint is contrary to the
notice requirements expressed in the deed of trust that
must occur prior to any legal action, and is unfair
because it is not permitted by the written agreement or
by federal or state due process law.

45. FNMA and their alleged counsel of record, alleged and
certified pleading a foreclosure claim at ¶ 19 that
states: "No other suit or action has been instituted,
or is now pending upon the Note or to foreclose the
Deed of Trust. Plaintiff has no adequate remedy at
law." The complaint, Exhibit 10, also alleged that
Plaintiff had failed to make monthly payments and that
the Note and Deed of Trust were in default.

46. These specific allegations in the foreclosure
complaint are patently false because another action is

pending regarding the enforceability of the alleged debt. These allegations are also contrary to pending federal TILA rescission requirements. Since the allegations are false, the signature on the claim is contrary to Oregon R. Civ. P. 17 C (1)-(4).

47. None of the communications during the course of this foreclosure proceeding provided Plaintiff with a validation notice.

48. During the course of the foreclosure proceeding, Seterus files an affidavit, copy attached hereto and incorporated herein as Exhibit 11, with false factual statements and conclusions contrary to applicable federal statutory and regulatory requirements associated with Plaintiff's rescission of the Transaction.

49. For example, the affiant claims the account is in default since September 1, 2010, amounts are immediately payable, plus pre- and post-judgment interest, plus fees, that no other suit has been instituted or is now pending upon the Note and Deed of Trust, and a reasonable attorney fee. These statements

22

confirm that FNMA acquired the Transaction after an alleged default and confirm possession of private financial data without proper licensure and registration with regulatory authorities that were not disclosed in the federal TILA claim.

50. The Affiant Rebecca Graves, under penalty of law, claims to be a Foreclosure Specialist of Seterus as authorized subservicer for FNMA. This type of statement, "authorized," is a charade, contrary to these Defendants pleadings in the previous federal TILA claim regarding authority subject to agency principles. No contract, or evidentiary documents regarding this authority was ever disclosed or produced in the previous TILA claim when requested in discovery and in support of FNMA and IBM's pleadings.

51. Accordingly, Exhibit 10 and 11 prove all of these Defendants are involved in some type of conspiracy for the common purpose of accruing an unlawful end or economic gain for themselves at the expense and detriment of Plaintiff.

52. Moreover, according to TILA's statutory rescission

23

mandate, Plaintiff is not in default and is prohibited and equitably estopped from assuming any position contrary to his rescission. This type of double standard imposed on Plaintiff is unfair, unethical, oppressive, and abusive legal conduct.

53. Thus, the affidavit by Seterus, and utilized by FNMA, and all Defendants contains a false impression of the character, amount and legal status of the alleged debt.

54. The foreclosure action is a communication from all Defendants and is a threat to take action that cannot be legally taken until Plaintiff's federal TILA claim is resolved on appeal.

55. The foreclosure action and documents filed therein by Defendants is an unfair business practice that amounts to harassment, piecemeal litigation, and induces confusion as to authority of source and sponsorship of servicing, ownership, and collecting an alleged debt.

56. All of the collection communications from Defendants overshadow Plaintiff's rights, and amount to a threat to communicate credit information, which is known, or should be known to be false, including the failure to

communicate to credit reporting agencies that a disputed debt is disputed.

57. In the interim, Plaintiff filed a motion to dismiss the state court foreclosure arguing that the court did not have subject matter jurisdiction, another action related to the alleged debt was still pending on appeal, that FNMA was not a real party due to their failure to properly attach the allonge affecting the proper negotiation of the promissory note and "Holder" status, and that Defendants failed to properly plead facts to constitute a cause of action, copy attached hereto and incorporated herein as Exhibit 12.

58. In Response thereto, these Defendants, change to the next attorney Shayda Zaepoor Le, continue their argument regarding an alleged default, and argue that Plaintiff has failed to obtain proof of a TILA disclosure violation, copy of their Response attached hereto and incorporated herein as Exhibit 13. When, in fact, these Defendants already stipulated and agreed on appeal that Plaintiff had already proven that the Notices of Right to Cancel were defective. Again,

25

false statements and pleadings are a sham and are unfair to the Plaintiff.

59. Plaintiff files a Reply to this Response pleading, copy attached hereto and incorporated herein as Exhibit 14, and respectfully informs the state court of the material defects, the lack of jurisdiction, the pending action on appeal, lack of real party, false statements, and improper negotiation of instruments regarding the allonge.

60. Moreover, Defendants have a duty under the 15 U.S.C § 1692e and rules promulgated by the Federal Trade Commission governing commerce, to comply with all restrictions on reporting directly or indirectly any disputed debts as disputed to all relevant parties.

61. Credit Reporting Agencies survey and pick up public information in lawsuits for purposes of reporting delinquent credit information and it accomplishes the same result directly and indirectly when Defendants fail to assert collection on disputed amounts giving a false and misleading representation of the character, amount and legal status of any debt.

26

62. Defendants knew or should have known that the original creditor/assignee failed to follow TILA rescission procedures within 20-days receipt of a valid request, failed to disclose the pending appeal, failed to provide competent evidence of a nexus, failed to produce a written contract that authorizes collection from subservicers, interest, or any expenses, all giving rise to unfair, deceptive, false, and misleading representations.

63. During the course of this foreclosure proceeding, and after multiple hearings, the state court grants counsel for FNMA tremendous latitude but verbally informs them to appear in court within 30-days with evidence to substantiate their claims.

64. John Thomas then files a Declaration, copy attached hereto and incorporated herein as Exhibit 15, in support of FNMA's supplemental record attaching the Clay Brangham Declaration but omits the exhibits filed in the federal TILA rescission case of Plaintiff, and claiming "The original promissory note that is the subject of this action is currently in my law firm's

27

office safe in Portland and I have personally viewed it; …"

65. Plaintiff alleges that the Declaration of John Thomas is a device to subvert or avoid actual presentation to the state court as instructed with evidence.

66. The next hearing occurs, and not one of these Defendants arrives in person with any evidence whatsoever as instructed by the state court and instead phone in by audio conference.

67. Clearly these Defendants have no evidence and as a result of this final hearing, the foreclosure claim is dismissed.

68. Indeed, Defendants' intentional conduct, negligence, omissions, misrepresentations and failure to abide by all foregoing federal and state law has caused substantial money damages, emotional and mental damages, headaches, nausea, loss of weight, embarrassment, insomnia, sick leave, as well as actual damage to the Plaintiff proximately and within his community.

## VI. **FIRST CLAIM**

## **Violations Of The FDCPA**

69. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1 - 68 above as if fully stated herein.

70. Defendants attempted to collect a consumer debt allegedly owed by Plaintiff and the obligation required Plaintiff to pay money arising out of transactions for personal, family, and household purposes.

71. The Defendants failed to communicate that a disputed debt is disputed after multiple notices were sent to the Defendants, disputing the alleged debt, a violation of 15 U.S.C. § 1692e(8).

72. The Defendants used a false, deceptive and misleading representation to collect an alleged debt which violates 15 U.S.C. § 1692e(10).

73. The Defendants' were obligated by federal statute to seek their remedy on appeal to the Ninth Circuit Court of Appeals whereby Defendants violated 15 U.S.C. § 1692e(5) when they threatened and did take action in

29

bad faith that cannot be legally taken.

74. Defendants have attempted persistently to collect an alleged debt that gives a false impression of the character, amount, and legal status contrary to 15 U.S.C. § 1692e(2)(A).

75. Defendants have failed to produce a valid contract or competent evidence that authorizes collection costs, attorney fees, including interest in violation of 15 U.S.C. § 1692f(1).

76. Defendants have filed suit to collect an alleged debt without legal authority and contrary to 15 U.S.C. § 1692f.

77. Defendants have litigated an alleged debt and engaged in conduct that is oppressive and where the natural conduct was to harass and abuse the Plaintiff's rights pursuant to 15 U.S.C. § 1692d.

78. The Defendants continuing collection and communication violated 15 U.S.C. § 1692g and §§ (b) creating confusion of Plaintiff's rights and by failing to fully provide requested verification of the debt.

79. The Defendants subsequent collection efforts violate

30

15 U.S.C. § 1692g(b) by failing to cease and desist collection until the alleged debt was competently verified.

80. The Defendants communication fails to contain the mandatory validation notice and violate 15 U.S.C. § 1692g.

81. The Defendants communication fails to contain the mandatory validation notice under 15 U.S.C. § 1692g, thus it is contrary to 15 U.S.C. § 1692e(11).

82. The foregoing acts and omissions of these Defendants were undertaken by them willfully, persistently, intentionally, knowingly, discriminately as part of their routine debt collection business and/or in gross or reckless disregard of the rights of the Plaintiff.

83. As a result of the above violations of the FDCPA, the Defendants are liable to the Plaintiff for declaratory judgment that Defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees under 15 U.S.C. § 1692k, Civil liability

31

## VII. **SECOND CLAIM:**

## **Violations Under The Oregon Revised Statutes, §§ 646.605 through 646.656**

84.    Plaintiff incorporates all the above foregoing

paragraphs 1 through 83 as if fully stated herein by

reference.

85.    The Oregon Unlawful Trade Practice Law ("OUTPL")

provides that it is unlawful for any person to use any

unfair method of competition or any unfair or deceptive

act or practice in the conduct of trade or commerce

within this state including the employment of an

Unlawful Collection Practice under Or. Rev. Stat. §

646.639.

86.    The instant matter is a consumer collection

transaction and Defendants' business service is within

the scope of the OUTPL.  Defendants' conduct and its

transactional business generally and specifically,

affect trade or commerce in this state.

87.    Defendants are not exempt under the OUTPL and nothing

stated within the scope of the Unlawful Collection

32

Practice under Or. Rev. Stat. § 646.639 makes them exempt from liability.

88. The violations of the FDCPA described in the above paragraphs was done knowingly or the willful commission of an unfair or deceptive act or practice within the scope of the Or. Rev. Stat. § 646.608(u).

89. Defendants violated Oregon law by engaging in the business of collecting debts, or attempting to collect an alleged debt from Plaintiff without a valid license and proper registration under Or. Rev. Stat. § 697.015.

90. The communications including a foreclosure action, the affidavits and declarations filed therein and in support thereof amount to an attempt to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, is contrary to Or. Rev. Stat. § 646.639(k).

91. The communications including a foreclosure action, the affidavits and declarations filed therein and in support thereof amount to a representation that the alleged debt may be increased by the addition of fees and charges when such fees and charges may not legally

33

be added under TILA rescission provisions is contrary to Or. Rev. Stat. § 646.639(m).

92.    The communications including a foreclosure action, the affidavits and declarations filed therein and in support thereof amount to a collection of interest and other charges in excess of the alleged debt that are not expressly allowed by federal law and contrary to Or. Rev. Stat. § 646.639(n).

93.    The conduct described in the above paragraphs causes injury, disparages Plaintiff's property value and is misleading under Or. Rev. Stat. § 646.608(h), is false representation concerning the nature of the transaction under Or. Rev. Stat. § 646.608(k), is unfair and deceptive trade under Or. Rev. Stat. § 646.608(u), is oppressive, substantively unconscionable, and contrary to public policy and generally recognized standards applicable to the consumer credit protection practices and the OUTPL.

94.    Defendants' conduct has failed to abide by the Federal Trade Commission rules, and failed to abide by the FDCPA.  Said conduct and material violations are

34

unethical, cause piecemeal litigation and harassment, oppressive or unscrupulous and has in fact caused substantial injury to the Plaintiff. Said conduct is unfair and deceptive within the meaning of the OUTPL.

95. The violations of the OUTPL described herein above cause or induce actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

96. Plaintiff is entitled to statutory and actual relief for said violations, and a reasonable attorney fee.

## VIII. THIRD CLAIM

### Declaratory And Injunctive Relief

97. Plaintiff repeats, re-alleges and incorporates by reference each paragraph 1- 96 above as if more fully stated herein.

98. There exists a dispute over whether Defendants have violated the FDCPA, and the OUTPL that must be determined judicially.

99. The unlawful, unfair and business acts and practices of Defendants described herein present a continuing threat to members of the general public in that

35

Defendants and the Doe Defendants are currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

100. Pursuant to OUTPL, Plaintiff seeks an order enjoining Defendants from engaging in the acts and practices as hereinabove alleged

101. Plaintiff is entitled to injunctive relief, a declaratory judgment and a determination that Defendants violated the FDCPA, the OUTPL, and Plaintiff is similarly entitled to an order enjoining said acts.

102. As a result of Defendants actions, omissions, and violations, Plaintiff is entitled to statutory damages, actual damages, punitive damages, reasonable attorney fees, and all costs to include time lost at work and litigating this matter.

103. Defendant's actions, omissions, and violations as alleged herein constituted the negligent, bad faith, and intentional infliction of mental and emotional distress upon the Plaintiff, proximately causing Plaintiff to suffer monetary damage, great mental

36

distress, mental and physical pain, embarrassment, humiliation and will in the future continue to suffer the same.

## IX. **FOURTH CLAIM**

## **Civil Conspiracy**

104. Plaintiff repeats, re-alleges and incorporates by reference each paragraph 1- 103 above as if more fully stated herein.

105. In the course of this Transaction, the improper negotiation with an allonge that is NOT so permanently affixed as to become a part thereof whereby it is fatal to a "Holder" status that was undisclosed and intentionally withheld from filing in a prior federal judicial proceeding now on appeal, the unlawful collection thereof, and on the dated intervals herein, collectively all Defendants persistently and intentionally acted with reckless indifference, malicious ill will, tortious character to induce such confusion upon Plaintiff as to source and sponsorship of mortgage loan ownership and services, and as to the collection of an alleged debt.

37

106. Defendants all at the direction of FNMA, Routh Crabtree Olsen, PC, its Defendant employees: John Thomas, Janaya Carter, Shayda Zaepoor Le, Seterus, Inc. acted in concert with actual knowledge and agreed with each other via joint venture or individual conspiracy for the common purpose of accruing an unlawful end or economic gain for themselves at the expense and detriment of Plaintiff.

107. Plaintiff was in fact injured as a direct and proximate result of these intentional unlawful acts and omissions, including *inter alia*, breach of trust, acts of intentional suppression of *material* facts, multiple *material* failures to disclose necessary parties, and filing false unsubstantiated documents in the public record, false notices, and invalid claims to foreclose on void instruments.

108. As a result, Plaintiff is entitled to statutory, actual, compensatory, and punitive damage to be proven at trial against Defendants, and whereby this clam should be allowed against any equitable claim of Defendants.

38

## X. JURY TRIAL DEMAND

109.    Pursuant to the seventh amendment to the Constitution

of the United States of America, Plaintiff is entitled

to, and hereby demands, a trial by jury.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be

entered against Defendants by this Court for the following:

1.    Enter injunctive and corresponding declaratory relief

establishing the foregoing conduct of Defendants to be

unlawful, enjoining Defendants from continuing to engage

in said conduct, and granting such additional equitable

relief as may be appropriate;

2.    Award Plaintiff actual damages;

3.    Award Plaintiff punitive damages;

4.    Award Plaintiff state and federal statutory damages;

5.    Award Plaintiff compensatory damages for mental and

emotional distress, humiliation and embarrassment to be

determined at trial;

39

6. Award Plaintiff reasonable attorney's fees;

7. Award Plaintiff his costs including time lost at work and litigating this matter;

8. Grant such other and further relief as it deems just and proper.

40

1
2
3
4                              **VERIFICATION**

5      I, Timothy Barnes hereby certify that the facts contained

6   in the foregoing First Amended Verified Complaint For Money

7   damages are true and correct to the best of my knowledge,

8
9   information and belief.

10

11  Dated:  July 7, 2015          Respectfully submitted,

12

13                               _____
                                 Timothy Barnes
14                               590 South Greenwood Rd.
15                               Independence, Oregon 97351
                                 503-585-9517
16                               tim@westsidelandscape.com

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this First Amended Verified Complaint For Money Damages, Jury Trial Demand has been filed with the clerk of the United States District Court for the District of Oregon and pursuant to Oregon Unfair Trade Practices Law to the authority as follows:

Oregon Department of Justice
Ellen F. Rosenblum, Attorney General
1162 Court Street NE
Salem, Oregon 97301-4096

By my signature below, I understand a) this complaint will become part of DOJ's permanent records and is subject to Oregon's Public Records Law; b) this complaint may be released to the business or person about whom I am complaining; c) this complaint may be referred to another governmental agency. By my signature below I authorize any party to release to the DOJ any information and documentation relative to this complaint.



July 7, 2015

Timothy Barnes
590 South Greenwood Rd.
Independence, Oregon 97351
503-585-9517
tim@westsidelandscape.com